```
                                                              FILED
                                                       UNITED STATES DISTRICT COURT
                                                            DENVER, COLORADO

              UNITED STATES DISTRICT COURT – DENVER, CO          JUN 29 2018
                                                              JEFFREY P. COLWELL
                                                                      CLERK
```

Case No. **'18 - CV - 01654**

| | |
|---|---|
| Archie Ulm & Leticia Ulm ) | **COMPLAINT** |
| ) | |
| **PLAINTIFFS** ) | * Fraud |
| ) | |
| ) | * Unfair Business Practices |
| Bank of America, N.A. ) | |
| & ) | * Violations of the Colorado |
| Real Time Resolutions, Inc. ) | Fair Debt Collection Act |
| ) | |
| **RESPONDANTS** ) | |
| ) | |

## PARTIES

1. Both Plaintiffs are residents of Larimer County, Colorado. 650 Elk Valley Road, Red Feather Lakes, Colorado 80545 (Mailing address: PO Box 36 Red Feather Lakes, CO 80545)

2. Defendant, Bank of America, N.A. (hereinafter 'BOA') is a Delaware Corporation with its principal office located at 101 South Tryon Street, Charlotte, NC 28255

3. Defendant, Real Time Resolutions, Inc. (hereinafter 'RTR') is a Texas company with its principal office located at 1349 Empire Central Drive, suite 150, Dallas, TX 75247

## JURISDICTION and VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper here because BOA assumes a security interest in Plaintiffs' home sitting in Larimer County, CO. RTR has an office in Denver, CO.

## STATUTE of LIMITATIONS

6. Although the Statute of Limitations on a promissory note in the State of Colorado is six years, the United States District Court, California ruled that the statute commenced when BOA invoked the acceleration clause of a promissory note. And in this case, RTR, presumably retained by

BOA, initiated the acceleration clause in April of 2015. (Garver v. Brace, 47 Cal. App. 4th 995, 1000, 1996) (Bird v. Real Time Resolutions 5:16 – cv – 04614 – EJD, N.D.Cal. Feb. 17, 2017).

## GENERAL FACTUAL ALLEGATIONS

7. In late 2008 and early 2009, the United States Federal Government provided a total of $45 billion to BOA pursuant to the Troubled Asset Relief Program (TARP). It also extended to BOA an additional guarantee of over $100 billion.

8. Knowing it had been given billions of dollars by the government, on April 17, 2009, BOA – the nation's largest mortgage servicer – signed a 'Service Participation Agreement' with the Federal Government requiring it to use 'reasonable efforts' to "...effectuate any modification of a mortgage loan under the Program."

9. In order to qualify for this program, a homeowner must satisfy the following requirements:
    a. Mortgage had to originate before January 1, 2009
    b. Home must be occupied by its owners
    c. Remaining balance on a single home cannot exceed $729,750.00.
    d. Borrower is able to demonstrate financial hardship

10. In Torres v. Bank of America (Case 8:17 – cv – 01534 – RAL-TBM) BOA was found guilty of ".....trying to prevent as many homeowners as possible from obtaining permanent loan modifications while leading the public and the government to believe that it was making efforts to comply." Moreover, BOA employed a scheme to falsely advise borrowers they had to be in default on their mortgage....in order to qualify for a modification. We are victims of BOA's fraud.

## FACTUAL ALLEGATIONS / VIOLATIONS of the
## COLORADO FAIR DEBT COLLECTIONS ACT - BOA

11. CFDCPA : 5 – 3.1 – 122 "No person shall engage in unfair or deceptive acts, practices or advertising in connection with a deferred deposit loan."

12. Allegation: In January of 2012, we (Plaintiffs) contacted BOA via telephone numerous times requesting a loan modification on the 2nd lien it holds on our home. We explained our hardship involving loss of employment and income, and that we met the requirements for a HAMP modification. At the completion of several phone conversations with BOA representatives, we were told that BOA would not consider us for a loan modification unless we were at least three months delinquent with our payments.   BOA failed to respond to our subsequent inquiries via telephone.

13. CFDCPA:  5 – 3.5 – 103(b)   "No lending without due regard to repayment ability

14. (b)(I) "A lender may not make a covered loan to a consumer based on the consumer's collateral without regard to the consumer's repayment ability, including the consumer's current and expected income, current obligations, and employment."

15. (b)(II) "There is a presumption that a creditor has violated this paragraph (b) if the creditor engages in a pattern or practice of making loans subject to CFR 226.32 without verifying and documenting consumers' repayment abilities."

16. (g) "No recommending default. No lender shall recommend or encourage on an existing loan or other debt prior to or in connection with the planned closing of a covered loan that refinances all or any portion of such existing loan or debt.

17. Allegation: On numerous occasions in September of 2009, BOA had mailed us blank checks with accompanying letters stating that we could withdraw up to $150,000; we were never asked to provide verification of income, credit reports, or monthly obligations. The epitome of "...dangling a juicy bone in front of a hungry dog."

## FACTUAL ALLEGATIONS / VIOLATIONS of the
## COLORADO FAIR DEBT COLLECTION ACT - RTR

18. CFDCA: 5 – 3 – 102   Notice of Assignment. "If requested by the consumer, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless the assignee does so, the consumer may pay the creditor."

19. Allegation: As we have been badgered for over four years heretofore by RTR, our repeated requests for documentation substantiating that RTR has been assigned by BOA have been ignored.

20. 12 – 14 – 109:
    (I)(a)  The Amount of the Debt;
    (I)(b)  The name of the creditor to whom the debt is owed;

21. Allegation:  RTR has sent us numerous letters over the course of four years with inconsistent terminology attached to differentiating dollar amounts due. Some of the terms include 'total amount due, past amount due, pay one lump sum, amount to resolve the lien', rarely including the standard term for a pay off, "principal balance."  Moreover until recently (May of 2018) letters sent from RTR did not include interest or current balance.

22. As RTR states that it records all phone conversations, it has habitually twisted and changed statements I have made by sending subsequent mailings stating I promised terms that I did not.

## ADDITIONAL FACTORS

23. In September of 2017, I and CO Real Estate Broker (witness) Gary Weixelman contacted BOA and RTR to advise them that an error in our property line /legal description was discovered. Mr.

Weixelman was representing a lady selling 70 acres of land adjacent to our 35. When the buyer retained surveyors to reinforce the legal descriptions, they found that almost all of our home was resting on our neighbor's property. In good faith, we contacted BOA / RTR via telephone to inform them that the property description BOA possesses for its mortgage security did not include the house. Mr. Weixelman and I were snubbed by BOA and RTR who both replied, "We don't care!"

24. As a consequence, to complete the sales transaction of the adjacent acreage, the seller gave us .33 acres encompassing our home, which was filed via a Quit Claim Deed with Larimer County.

## REDRESS

25. We the Plaintiffs ask the following of the Court:
    a) BOA order to pay Plaintiffs $186,134.81 (amount RTR demands for 2nd lien) for six years of duress, uncertainty, and punitive damages for its habitual disregard for our seeking a loan modification - and its disregard for the Colorado Fair Debt Collection Act.
    b) A court order to Larimer County and the Mortgage Electronic Registration System (MERS) deleting BOA's holding of a second lien on our home and property.
    c) RTR order to pay Plaintiffs $25,000 for four years of confusion, uncertainty, threats of foreclosure, and duress – and its lack of respect for staying within the parameters of the CO Fair Debt Collection Act.

26. BOA and RTR have demonstrated that holding our home as security for the second lien is meaningless to them. Moreover BOA, being in the business of providing home loans, has repeatedly ignored our requests for a modified payment plan – instead allegedly retaining RTR to repeatedly get us to forward money, regardless of specificity, verification or consistency.

In Pro Pe

*[signatures]*

Archie Ulm
Leticia Ulm

June 26th, 2018